case of United States v. Baez, Mr. Spilkey. Good morning, your honors. May it please the court. My name is Ezra Spilkey and I'm representing Adlon Baez, the appellant. Mr. Baez is before this court challenging the admission of other acts evidence in this gun possession and sale case because armed robberies, prior gun possession, convictions, and a prior gun sale had little to no bearing on any disputed issue. The district courts erroneously allowed evidence of other acts that was inadmissible under Rule 404B and Rule 403. Wasn't your client, wasn't your client contesting or asserting that he was induced by the government to engage in behavior he wouldn't otherwise be induced, wouldn't otherwise engage in? That's correct, your honor. Mr. Baez. These other things, why aren't each of these other items that you're objecting to on his behalf evidence that shows his propensity to engage in the very activity he's saying he wouldn't have engaged in? Well, predisposition under Brunstein can be shown by an existing course of criminal conduct, that the crime was already planned, and a willingness is shown by ready response. Let's start with the armed robberies. There's no way that the government can argue that the gun possession, it's... Does the word armed mean anything to you? Your honor, it's under a, the point is well taken, but under Rule 403 it's much more inflammatory to argue that Mr. Baez was predisposed to commit dangerous armed robberies of drugs and stash houses, which are heavily fortified, when he has nothing like that in his record. He was likely puffing, as shown at trial by the testimony of the DEA agent who testified that he didn't follow up to see if there was in fact a robbery crew as Mr. Baez stated to the CI on the recording. Is that part of the narrative inextricably intertwined with the charged offense? Is it part of the story that needs to be told? Your honor, respectfully, no. The story was compellingly told in the indictment without any mention of armed robberies. On the other hand, during trial, the armed robberies became a motif of sorts, pervading the entire trial. It was mentioned robberies, armed robberies, rather robberies were mentioned some 100, 120 times at trial. But did Judge Woods find that the robbery story was part of the complete story of the crime on trial? Did he make that finding? I don't have that on the top of my head, your honor, but assuming that he did, I would respectfully submit that he was mistaken in that. This is a very simple gun sale and gun possession case that does not require the inflammatory evidence of armed robberies. What about the government's argument that the discussion of armed robberies between your client and Mr. Morales might be relevant to responding to your claim that Mr. Baez was unaware that Morales was a convicted felon? Doesn't the ready turn to plotting together to do an armed robbery suggest that they're both experienced criminals and that he would know that Mr. Morales, it was unreasonable for him to conclude if he did, that Mr. Morales was in the New Jersey county jail for a traffic violation, for example. There is probative value on that point, showing that knowledge, and that was a disputed issue. However, there was, under old chief, you have to look at evidentiary alternatives, and there was Mr. Morales' testimony that he had told Mr. Baez in the New Jersey jail that he was coming out of a five-year bid rather than just a traffic violation. There were evidentiary alternatives. It wasn't a conceded aspect of the case, though, was it? Absolutely not. It was disputed, Your Honor, and the government is entitled to prove its case by belt and suspenders, let's say, but not when it's so prejudicial that it's completely a different category of conduct. We're in abuse of discretion review, though, right? Yeah, that's correct, Your Honor. The district court was very detailed in its analysis of the evidence that was proffered and conducted a balancing test the way we require under the evidentiary rules, right? Your Honor, I don't believe so. The district court focused on the two first prongs of 404B, whether the evidence was being offered for a proper purpose and its relevance, but mentioned 403 only in passing and mentioned the prejudicial effect only in passing and did not carefully weigh the prejudicial effect of this additional evidence. Well, then, if error, maybe you could explain why it's not harmless error. Yes, Your Honor. Under harmless error, the Kaplan court counsels that this court look at the strength of the case, the prosecutor's conduct with respect to the case, the importance of the wrongly admitted evidence, and whether such evidence was cumulative. On those two . . . on steps two and four . . . Can we talk about one first? I mean, Mr. Baez admitted after he was arrested on tape that he possessed the Tec-9 before he met Mr. Morrell, right? That's right, Your Honor. Doesn't that kind of undermine his entire entrapment defense from the get-go? It does, Your Honor. It is . . . it weighs in favor of false evidence. Finding no harmless error, however, steps two and four are way heavily in favor towards plain error, which is that the prosecutor's conduct with . . . the prosecution's conduct with respect to this evidence was to make it a motif and to show that . . . well, to invite the jury to convict on the basis of taking a dangerous armed robber off the street, which just wasn't the case. And the evidence was cumulative with respect to the armed robbery. There was other evidence, other much less inflammatory evidence, to show that Mr. Baez had knowledge of Mr. Morrell's status as a felon. Your Honor, as I see, my time is up, unless the Court has any questions? Judge Hall, did you have anything further at this point? No. Okay. We'll hear from the government then. Mr. Ensor. Good morning, Your Honors. May it please the Court. I represent the United States in this appeal as I did below at trial. The record here shows that Judge Woods carefully and thoughtfully assessed the relevant factors under Rule 403 and Rule 404B before coming to the decision that the challenged evidence was appropriately admitted. He did not abuse his discretion. His analysis was thorough. It was thoughtful. It was detailed. And to the extent, even if there was any alleged error, it certainly was harmless. Let me ask a question, please. It seems that there was a transcript of the first recorded conversation between Mr. Baez and Morrell on August 29th, but I don't think we received that transcript. Am I right in understanding there was one? Since that was their first conversation, I was particularly interested in it. That's correct. There was a transcript of that call, and we did not submit it with the brief. If Your Honor has a specific question about it, I certainly can try to answer that question. Okay. Well, I just was, you know, since we're looking very closely at each aspect of their interactions in light of the entrapment defense, I was interested. Can you say from the record who initiated the conversation about the collaboration on an armed robbery? Does the record make that clear? It wasn't clear to me. I think it does if you look at the testimony of Mr. Morrell. Morrell, the informant, said that he had a drug supplier and proposed the idea of committing a robbery. And then the defendant excitedly said that he was interested in doing that, that he had firearms, equipment and personnel that could be used to perpetrate that robbery. And that meeting, where that was initially discussed, was a meeting where Mr. Morrell, the informant, and the defendant discussed the sale of the Tec-9 for the first time. It's a meeting where the defendant said that the Tec-9 was for sale. The second time they discussed the armed robbery was the actual meeting where the sale occurred itself. So I think it is fair to say that the discussions about the armed robbery were part and parcel intertwined with the story of the offense, the relationship between the informant and the defendant. They were important for the jury to understand the context of how the relationship evolved, why the defendant trusted the informant enough to sell him a Tec-9 out of the back of a trunk in Manhattan. It was highly probative on the question of predisposition, both in terms of the fact that the defendant said he had firearms that he presumably obtained without any government inducement, and also his excited willingness to commit a crime with the informant demonstrated that he, it flew in the face of his testimony that he had no idea the informant was a felon when he sold the weapon, and also the notion that he was actually just trying to solicit an investment from the informant, which was his claim to the jury. Well, that's a lot there. Are you saying that this story was so inextricably intertwined with the story of the offense that's charged that you would have introduced it even regardless of an entrapment defense? We would have, Judge. We did seek to admit it on that basis. What did Judge Woods find on that point? Judge Woods at the final pretrial conference did not address whether this was admissible as direct proof. He admitted it for the purpose of rebutting the entrapment defense and showing predisposition, and he made a remark that he might have viewed it differently if the defendant had not asserted an entrapment defense. So the judge's basis was to rebut predisposition, and we think that was appropriate, and it was not an abuse of discretion. But there certainly were many other bases for admitting it, and the government did, in fact, try to seek to introduce the evidence for these other reasons, the relationship of trust, the fact that it was intertwined with the story, to demonstrate knowledge that the informant was a felon, which is something we bore the burden of proving beyond a reasonable doubt and was hotly contested at the trial. What are we to make of Mr. Baez's argument and testimony that his interaction with Moral actually began when they were in prison, and that's where the government's inducement began, and really every conversation after that reflected, was a product of the inducement, so that in assessing whether he was predisposed, we actually don't have the tapes and so on that we have from after their release from jail are kind of irrelevant, that we need to look and scrutinize the relationship that began while they were in jail together. There is a dispute between the parties about whether Moral was working for the government when he was in jail, whether the inducement occurred in jail versus on the initial call on August 29, but that dispute, I think, is immaterial. For the question of whether conduct after the alleged inducement is relevant, under this Court's decision in the Cromitte case, conduct that occurs after the alleged inducement is and can be relevant to whether or not somebody was predisposed before the government contact, as long as the conduct was independent of the government inducement. Also — How can we judge that if we don't know what the inducement was in their conversations in jail? Well, there was testimony about what the alleged inducement was. Baez asserted, if you accept his testimony at face value, he asserted that the informant suggested the idea of buying a Tec-9. There was evidence contradicting that, overwhelming evidence contradicting it, including the videotaped post-arrest statement where Baez said he had the Tec-9 before he even met the informant. The first call where Baez says in substance, yo, I got some new toys, he's the one who raises it on his own initiative, suggesting that it's not the informant who's inducing him at all. And if you look at the text messages which were introduced in the record, and I think I've submitted them in our special appendix, on October 3rd, it is Baez who first raises the idea of selling the Tec-9. He says — he initiates the conversation about that and indicates that he wants to sell it now because he needs to make room for new toys, a reference to new guns that he's obtained. So there is evidence in the record to judge that. But the conduct after the alleged inducement and statements that Baez makes are highly probative of his pre-inducement state of mind. The court can consider that under committee. And statements — Why can we be confident that they're independent of the initial inducement? So the statement, I have firearms in substance, when they're talking about committing an armed robbery, Mr. Morale, the informant, didn't do anything to prompt that statement. He didn't ask whether the defendant had firearms to do that. That's something the record is indicative of the fact that he was predisposed. The first — the sale of the .38 revolver, as an example. In that meeting in a basement, the defendant shows the informant firearms for sale. The informant asks about the Tec-9. The defendant says that he — that's not for sale at this time, and then tries to get the informant to buy a different gun, the revolver. The informant initially says he's not interested in buying that, and then the defendant persuades him to buy the revolver. I see that my — You have two minutes. That is deeply damaging to the entrapment defense. It shows that it was not in fact Morale who had arm-twisted the defendant into selling the Tec-9. He didn't want to sell it at that time, and so it wasn't sold at that time. It was the defendant who persuaded the informant to buy the other gun, suggesting that this is not a situation where he was overpowered into selling it, something he wanted to do on his own initiative. So although this happened after the alleged inducement — When you say the other gun, you are referring to which one? The revolver, the .38 caliber revolver. And I'm referring to the September — I'm sorry, Judge. No, that's fine. Sorry. Let me just ask you very quickly about Government Exhibit 2B2, which is the transcript of the conversation. I think it's the lead-off in your supplemental appendix. Yes, Your Honor. And Mr. Baez says, I got the fastest machine gun that's on the market today, and that's the MAC-11. Who initiated that call? Does it indicate? Your Honor, are you at Special Appendix 4, page 4? Sorry. Let me just — SA-2, Supplemental Appendix 2. This is a recording of an in-person meeting. It is not a call. It's an in-person meeting between the defendant, the informant, and a cooperating witness called Eddie. And in terms of the meeting, we would say that the evidence shows that it was the defendant who initiated this meeting, because in the very first call on August 29 — I see that my time has run out. Answer the question. In the very first call, the defendant is the one who, on his own initiative, says, yo, I got some new toys. That prompts a discussion that leads to this meeting. So we would say it was the defendant who raised that. Thank you. Judge Hall, anything further for the government? No? All right. Then you have two minutes of time. Yes, Your Honor. I'll just pick up with the inducement — rather, the post-inducement statements. Let's say, for the sake of argument, that Morrill twists Mr. Baez's arm in jail when nothing is recorded, nothing — we can only rely on Mr. Morrill's word. Everything after that, if it shows a ready response by Mr. Baez, doesn't show his pre-inducement state of mind, which is what's relevant under Brand. I think what the government is saying is that to the extent his actions over the following month or five weeks were independent of the initial conversation in August and show the ready willingness to participate in the transaction and show his initiation of continued relationship about this — it does proceed over five weeks where we have a series of conduct of him initiating discussions about the sale — that it does, in fact, reflect — it can be used to reflect his — or to make a determination about his pre-inducement state of mind. So is that — that's incorrect, you think? I differ with my colleague's characterization. I think that his — anything that happened, any willingness that he betrays post-inducement is not relevant to his state of mind. But it's not just willingness, though. It's that he takes the initiative time and time again after the end of August. Yes, Your Honor, that's correct. However, I — my colleague and I can differ about the applicability of Cromitty. But I believe under Brand that any — that — for instance, in the Brand case, the ready response was immediate. This Court characterized the response as jumping at the bait, let's say. To accept — isn't the logical extension of your argument, Mr. Spilkey, that has to be that based on the government's inducement, we suddenly got a gun nut who is talking about all of these toys and his MAC-11 and the best machine gun you can get and all of that. And that just arose full-blown like Venus out of the half-shell after he was induced by the government informant. Your Honor, it's certainly relevant to — it's certainly relevant to the client, the — Mr. Baez's state of mind, but not to his pre-inducement state of mind. I see that my time is up if the — unless the Court has any further questions. Judge Hall, did you have anything further? Yeah, thank you. Mr. Sullivan, are you okay? Thank you. I think we have the arguments. We'll take the matter under advisement.